[Crim. No. 4224. In Bank.—August 3, 1939.]

THE PEOPLE, Respondent, v. VIRGILIO SPINELLI, Appellant.

A. P. Coviello for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

YORK, J., *pro tem.*—The appellant, Virgilio Spinelli, also known as William Spinelli, was charged in an information filed by the district attorney of Los Angeles County with the crime of murder, the charge being that on or about December 12, 1938, he did "wilfully, unlawfully and feloniously and with malice aforethought murder one Rose Spinelli, a human being".

Appellant entered a plea of "not guilty" to the charge, as well as a plea of "not guilty by reason of insanity". He was thereafter tried by a jury which returned its verdict finding appellant guilty of murder, as charged in the information, and finding the offense to be murder in the first degree without any recommendation for mercy. Trial was then had upon the issue of insanity, the jury duly returning its verdict finding appellant sane at the time of the commission of the offense charged in the information. Motion for new trial was made and denied, and judgment was thereafter pronounced and appellant sentenced to the state's prison to be there put to death in the lethal gas chamber.

This cause comes to this court upon an automatic appeal from such judgment, as well as from the order by which appellant's motion for a new trial was denied. The briefs filed herein are appellant's opening brief and respondent's reply thereto, no closing brief having been filed on behalf of appellant, but the matter was argued before the court.

Appellant raises three points upon this appeal, namely: (1) Alleged insufficiency of the evidence to support the judgment; (2) Alleged error of the court in instructing the jury; (3) Alleged error by the court in the admission and rejection of evidence.

Appellant raises no question as to the propriety of the jury's finding as to his sanity upon his plea of "not guilty by reason of insanity".

The evidence adduced at the trial, omitting some of the more sordid details the recital of which would serve no useful purpose upon this appeal, shows the following facts: On December 12, 1938, and for about twenty years prior thereto, appellant and his wife owned and lived upon the property known as 305 North Mountain View Avenue in the city of Los Angeles, and during several years prior to that date had been having serious domestic difficulties, appellant and his

wife occupying rooms in different ends of the house upon the said property. On the said date, and for about three weeks immediately prior thereto, appellant and his wife together with their son, William Spinelli, Jr., were the sole occupants of this house. There were five children the issue of this marriage, three girls and two boys, and it is admitted that one of the causes of the trouble between appellant and his wife was the incestuous relations between appellant and at least one of his daughters.

The deceased met her death on the morning of December 12, 1938, and on or about the twenty-first day of the same month, appellant was arrested and charged with her murder.

Appellant in his opening brief makes the point that he "gave a confession or statement to the police in which he admitted striking the deceased two blows in the head with a hatchet, as a result of which she died. He further stated that while he was lying on his bed in his front bedroom the deceased came into the room and struck at his head with the hatchet, inflicting a three-inch wound on his forehead. He partially parried the blow with his hand and at the same time kicked out and struck her in the chest or stomach, causing her to fall over backward in a sitting position. That he then snatched the hatchet from her and struck her in the head twice." It is the contention of appellant that this statement which he made to the police officers soon after his arrest on December 21, 1938, discloses a justifiable homicide.

Said statement, as it appears in the record, is in part as follows: "I laid down on the bed and she hit me over here (indicating head). I threw up my hands and I grabbed for the hatchet and I kicked her in the stomach and she fell down and I got up and hit her two times in the head. Q. With what? A. With the hatchet. I hit her two times in the head while she was laying down. I hit her two times and she was on her face like that and I went back to the bed and I was plenty blood, no use to lie." He then stated that he left the house and had the wound in his forehead dressed by a doctor, secured some food for himself and returned home where he dismembered the body and reduced it to ashes by piling portions of it with wood in a ditch which had been dug in the back yard and used as an incinerator. Such remains were thereafter strewn by appellant in deep ruts in the driveway leading into the said property, where certain dental bridgework,

a wedding ring and some fragments of bone were later found. There was therefore no way of finding out by an examination of the body of deceased what actually caused her death.

For a long period of time appellant had done nothing toward the support of himself, his said wife or his family, and so far as the record reveals, he was entirely supported by his wife, who was employed doing housework for one of the neighbors, together with some assistance from his children.

The only point made by appellant that is worthy of consideration is that the facts in evidence bring this case within a certain quoted portion of the opinion written by Mr. Chief Justice Waste in *People* v. *Howard,* 211 Cal. 322 [295 Pac. 333, 71 A. L. R. 1385], at 329, it being the contention of appellant that the only evidence before the jury was that the decedent was the aggressor in a quarrel which led up to the homicide, and that there remains no evidence from which it might reasonably be deduced that the killing was the result of a wilful, deliberate and premeditated intent to kill, appellant contending, as in the cited case, that there is a dearth of evidence tending to show conditions as they existed at the time of the homicide and from which it might reasonably be held that the murder was, in fact, wilful, premeditated and intentional.

Although it is true that appellant was the only witness to the crime, nevertheless, under all the facts and circumstances disclosed by the record, the circumstantial, if not the direct, evidence is sufficient to justify the jury in determining that the murder was premeditated, wilful and intentional. It is quite improbable that appellant would have used the terrible means he did in disposing of his wife's body, unless he had actually intended to murder her, and unless the act was wilful and premeditated; in fact, she may not have been actually killed until appellant cut off her head. Appellant destroyed all physical evidence as to the exact manner in which he accomplished the death of his wife, but both his acts and his statements which were made after he killed her were sufficient to justify the jury in finding that the crime was murder in the first degree. His attempt to besmirch her character by stating that she had gone off with another man, and his act in getting his son to write a letter to that effect, which appellant thereafter sought to pass off as his wife's handwriting, together with the brutal dismembering and destruction of his

wife's body, are all wholly inconsistent with his contention that he acted only in self-defense. The jury was completely justified in believing that he murdered his wife maliciously and that his malice against her continued long after her death.

It is also appellant's theory that he could be found guilty of no greater crime than that of voluntary manslaughter, because all of the evidence tends to prove the decedent was the aggressor in the fatal affray. The evidence of the relations which existed between the husband and wife constitutes a sufficient basis for the jury's determination that the murder was in fact wilful, premeditated and intentional. The testimony of appellant alone completely repudiates the theory or belief that the killing was committed by him in self-defense. He admits that he killed his wife while she was lying upon the floor in an unconscious condition by hitting her on the back of the head in at least two places. The fact that he was a small man and she was a large woman would be inadequate as a justification for the deliberate killing as testified to by appellant himself.

A similar situation was before this court in *People* v. *Johnson*, 203 Cal. 153, where it is stated at page 164 [263 Pac. 524] : "As to the argument that no malice on the part of the defendant, which is a necessary element or ingredient of murder of the first degree, was shown by the case presented and, therefore, the penalty fixed by the jury cannot stand, it is sufficient to say, that the duty of affixing the penalty in murder cases of the first degree is, by section 190 of the Penal Code, committed to the sound discretion of the jury trying the case. Malice, as defined by section 188 of the Penal Code, may be express or implied. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. Again these are questions which it is the province of the jury to determine. The ruthless disposition of the body of the deceased, following the killing, certainly is some evidence as to an abandoned or malignant heart upon the part of the slayer. However this may be, section 1105 of the Penal Code provides that 'the commission of the homicide by the defendant being proved, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prose-

cution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable'. The defendant offered no proof to meet the burden which the law casts upon him and as there was no claim of justification or excuse offered for the killing of decedent or pretense that the proof tended·to show that the crime committed only amounted to manslaughter, the crime was murder of the first degree.''

Appellant contends that the trial court ''committed prejudicial error in instructing the jury that if an assailant has fallen to the floor and the danger of great bodily injury to the defendant has been removed, if the defendant thereafter strike a fatal blow upon his assailant such blow is not justified''; urging that this was an instruction as to a matter of fact and as such was an invasion of the province of the jury. An analysis of the instruction complained of discloses that it contains a qualifying clause, and that it is only ''where the circumstances are such as to justify a defendant in striking his assailant in self-defense and such assailant has fallen to the floor and the danger of great bodily injury to the defendant has been removed'', that the defendant is guilty of felonious homicide if he thereafter strikes a fatal blow upon the body of his adversary. It is perfectly obvious that there is nothing objectionable in the wording of this instruction. The rights of appellant were fully protected by the trial court, and the particular instruction hereinbefore referred to, together with the other instructions which were given upon the subject of self-defense, correctly stated the law of the case.

Appellant finally urges that the verdict was the result of passion and prejudice, contending that ''the incestuous relations could not possibly have been the motive for the killing, and that the only purpose which any and all remarks or testimony produced on the part of the district attorney in connection with the said alleged incest was for the purpose of creating prejudice and bias in the minds of the jury''.

There is no merit in this contention. It was a necessary fact to show the real reason for the commission of the murder. The statement or confession of appellant himself discloses that many of the quarrels between appellant and decedent resulted from the fact that decedent knew that appellant was having an incestuous relationship with one of the daughters.

All of the facts and circumstances disclosed by the record in this case show a vicious, wanton and wilful murder of decedent by appellant. The jury was not only justified in bringing in its verdict of murder in the first degree without recommendation as to clemency, but it could hardly have brought in any other verdict.

Both the judgment and the order appealed from are affirmed.

Shenk, J., Edmonds, J., Curtis, J., and Houser, J., concurred.